**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLIOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MAGNOLIA PEARL, LLC**, a Texas limited liability company, | § § § | |
| Plaintiff, | § § | Case No. 1:25-cv-7907 |
| v. | § § § § | **PLAINTIFF'S COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| | § | |
| **ROBERT LESHTZ**, an individual; **LE SHENT INC.**, an Illinois corporation; and **DOES 1-10, inclusive,** | § § § § | **JURY TRIAL DEMANDED** |
| Defendants. | § § § | |

Plaintiff Magnolia Pearl, LLC ("Plaintiff" or "Magnolia Pearl"), hereby brings the present action against Defendants Robert Leshtz, Le Shent Inc., and DOES 1-10 (collectively, "Defendants") and alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for infringement of Plaintiff's federally-registered trademarks under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for dilution under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and for substantial and related claims of trademark infringement, unfair competition, and trademark dilution under the statutory and common laws of the State of Illinois, all arising from the Defendants' unauthorized use of the trademarks in connection with the manufacturing, distribution, marketing, advertising, promotion, importing, offering for sale, and/or sale of Defendants' goods.

2.      Plaintiff seeks injunctive and monetary relief.

3.     This Court has subject matter jurisdiction over the federal claims asserted in this action under 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1338(a), and 1338(b), and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they are so related to the federal claims that they form part of the same case or controversy.

4.     This Court has personal jurisdiction over Defendants because Defendants conduct continuous and systematic business in this district, maintain their headquarters (or place of business) and/or reside in this district, and/or derived commercial benefits from the sale of infringing products and caused injuries to Plaintiff within the Northern District of Illinois.

5.     Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims alleged occurred in this judicial district. Plaintiff is informed and believes, and on that basis alleges, that Defendants have conducted and continue to conduct business in this District and have engaged in the complained of activities in this Judicial District.

## THE PARTIES

6.     Magnolia Pearl, LLC is a limited liability company, organized and existing under the laws of the state of Texas, with an office and principal place of business at 461 Split Rail Crossing, Fredericksburg, Texas 78624.

7.     Upon information and belief, Defendant Robert Leshtz ("Leshtz") is an individual who resides at 1473 West Farragut Avenue, Unit 1, Chicago, Illinois 60640.

8.     Upon information and belief, Defendant Le Shent Inc. ("Le Shent Inc.") is an Illinois corporation with a principal place of business at 3740 North Lake Shore Drive, Chicago, Illinois 60613-4237. Mr. Leshtz is President of Le Shent Inc.

9.     Upon information and belief, other individuals and/or entities currently named as DOES 1-10 may also be responsible in one manner or another for the wrongs alleged herein, in that at all relevant times, each was the agent and servant of the Defendants and was acting within

the course and scope of said agency and/or employment. These other individuals and/or entities are sued under fictitious names DOES 1-10 because their true names and capacities are currently unknown to Magnolia Pearl. Magnolia Pearl will seek leave to amend this Complaint when the true names and capacities of DOES 1-10 are ascertained.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

### A. **Magnolia Pearl and its Marks**

10.     Magnolia Pearl is a high-end clothing company that was founded in 2001 by Robin Brown.

11.     Inspired by Ms. Brown's childhood memories of wearing smocked dresses, Magnolia Pearl is renowned for its vintage-inspired, handcrafted garments that blend worn aesthetics with heirloom-quality craftsmanship, and each piece of clothing is meticulously designed and produced in limited quantities, emphasizing artistry and individuality.

12.     The brand's distinctive style features hand-distressed finishes, intricate patching, visible mending, and the use of natural materials such as embroidered linen, velvet, vintage lace, and silk. Magnolia Pearl garments are known for their comfort, inclusivity, and timeless appeal, with many pieces designed to fit a range of sizes.

13.     Magnolia Pearl is headquartered in Fredericksburg, Texas and employs close to 80 employees in the United States.

14.     Genuine Magnolia Pearl clothing and accessories are distributed through the Magnolia Pearl website located at <magnoliapearl.com>, two flagship stores located in Fredericksburg, Texas and Malibu, California, and approximately 300 wholesale boutiques throughout the world.

15.     Wholesale customers of Magnolia Pearl are prohibited from selling Magnolia Pearl products on third party platforms, such as Amazon, Wal-Mart, eBay, Poshmark, and Mercari.

16.     Magnolia Pearl has continuously sold clothing and accessories under the MAGNOLIA PEARL trademark in the United States since at least as early as October 2001. As a result of its long-standing use, Magnolia Pearl owns common law trademark rights in its MAGNOLIA PEARL trademark. Magnolia Pearl has also registered its MAGNOLIA PEARL trademark with the United States Patent and Trademark Office. Often Magnolia Pearl trademarks are displayed in more than one location on a single product (*e.g.*, interior label, external hangtags, etc.). Magnolia Pearl uses its MAGNOLIA PEARL trademark in connection with the marketing of its products, including the following marks, which are collectively referred to as the "MAGNOLIA PEARL Marks":

| Trademark | Reg. No. | Goods/Services | Status |
|---|---|---|---|
| MAGNOLIA PEARL | 4178784 | **Class 25:** Bloomers; Blouses; Coats; Dresses; Jackets; Pants; Scarves; Shirts; Skirts; Slips; Sweaters; T-shirts; Tank tops; Tops; Tunics; Undergarments | Incontestable |
| MAGNOLIA PEARL | 5642383 | **Class 35:** On-line wholesale and retail store services featuring clothing, shoes, fashion accessories, jewelry, millinery, homegoods, bags, gifts, and antiques; On-line retail gift shops; Wholesale and retail store services featuring clothing, shoes, gifts, fashion accessories, jewelry, millinery, homegoods, bags, and antiques | Incontestable |
| MAGNOLIA PEARL | 5246047 | **Class 18:** Backpacks; Clutches; Crossbody bags; Fanny packs; Handbags; Hobo bags; Messenger bags; Purses; Rucksacks; | Incontestable |

| Trademark | Reg. No. | Goods/Services | Status |
|---|---|---|---|
| | | Saddlebags; Satchels; Tote bags; Wallets | |

17.     The above U.S. trademark registrations for the MAGNOLIA PEARL Marks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. The registrations for the MAGNOLIA PEARL Marks constitute prima facie evidence of their validity and of Magnolia Pearl's exclusive right to use the MAGNOLIA PEARL Marks pursuant to 15 U.S.C. § 1057(b). The MAGNOLIA PEARL Marks have been used exclusively and continuously by Magnolia Pearl since at least as early as 2001 and have never been abandoned.

18.     The MAGNOLIA PEARL Marks have been widely promoted, both in the United States and throughout the world, including in *Texas Monthly, New York Times*, *Business Insider*, and *USA Today*. These articles have acclaimed the high artistry, fashion, style, and uniqueness of Magnolia Pearl's designs.

19.     Magnolia Pearl is a leader in the fashion movement, sometimes referred to as art wear, and has cultivated a devoted following, including celebrities, musicians, and fashion influencers.

20.     The famous designer Betsey Johnson has purchased Magnolia Pearl clothing for years, and has described Ms. Brown, as "my Vivienne Westwood, my Alexander McQueen."

21.     The MAGNOLIA PEARL Marks are distinctive when applied to Magnolia Pearl's clothing and accessories, signifying to the purchaser that the products come from Magnolia Pearl and are manufactured to Magnolia Pearl's quality standards.

22.     Magnolia Pearl has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting and protecting the MAGNOLIA PEARL Marks.

As a result, products bearing the MAGNOLIA PEARL Marks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from Magnolia Pearl.

23.    In addition to its fashion line, Magnolia Pearl operates a resale platform, Magnolia Pearl Trade, where collectors can buy and sell unique items. Notably, a portion of the proceeds from this platform is donated to various charitable causes through the Magnolia Pearl Peace Warrior Foundation, including housing for Indigenous Americans, art programs for children, and medical care for the homeless and their pets.

24.    Magnolia Pearl's blend of artistic design, quality craftsmanship, and social consciousness has established it as a unique and influential force in the fashion industry.

**B.  Defendants' Infringing Activities**

25.    The present lawsuit arises from Defendants' wrongful importation, acquisition, distribution, advertisement, marketing, offering for sale, and/or sale of clothing which infringe upon Plaintiff's rights in the MAGNOLIA PEARL Marks (the "Accused Products").

26.    Upon information and belief, Defendants operate as a merchant engaged in the retail sale of apparel through an eBay online-storefront at <ebay.com>, which is accessible to customers nationwide, including those within this judicial district, and have sold over 13,000 goods, many of which have been MAGNOLIA PEARL-branded goods.

27.    Defendants currently sell or have sold the MAGNOLIA PEARL-branded goods, including the Accused Products, through their eBay storefront under the name "Leshent Boutique" located at the following link, <https://www.ebay.com/str/leshentmusthaveclothing>, screenshots of which are attached hereto as **Exhibit A**.

28. Exemplars of products that Defendants currently offer for sale or have recently sold through the "Leshent Boutique" eBay storefront are shown below and screenshots of the entire product pages are attached hereto as **Exhibit B**:





29.     Exemplars of the Accused Products that Defendants have sold through the "Leshent Boutique" eBay storefront are shown below and screenshots of the entire product pages are attached hereto as **Exhibit C**. These exemplars are merely a representative sample of the Accused Products that Defendants have sold.



-8-



30.     Beginning on or around March 2025, Plaintiff, through its brand enforcement partner, MarqVision, filed takedown notices of Defendants' eBay listings that featured the Accused Products.

31.     On or around May 23, 2025, Defendants sent an e-mail to MarqVision stating, "All of mitems [sic] have been bought from authorized dealers or from magnolia pearl directly." *See* screenshot of Defendants' email attached hereto as **Exhibit D**.

32.     While Defendants may have obtained a limited number of items from Magnolia Pearl Trade, the majority of the Magnolia Pearl products they offer for sale—including newer release products—are listed at prices significantly below Magnolia Pearl's retail price and are frequently discounted.

33.     For example, Plaintiff currently sells its "Eyelet Heeren Dress" for $600 USD through its official website as shown below and in **Exhibit E**. However, Defendants previously sold an allegedly identical dress that they marketed as "new with tags" for $449 USD as shown below and in the previously identified **Exhibit C**.



34.     Magnolia Pearl maintains strict agreements with its authorized retail partners, which prohibit the sale of current stock at below-retail pricing. Accordingly, Defendants can only lawfully obtain genuine Magnolia Pearl products at full retail price, and thus their consistent sale of newer-release Magnolia Pearl products at discounted prices raises concerns regarding the source and authenticity of the Accused Products.

35. Upon information and belief, Defendants have acquired the Accused Products through unauthorized means and have introduced the Accused Products into the stream of commerce to exploit Plaintiff's reputation in the market established in the MAGNOLIA PEARL Marks and its associated products.

36. Defendants have never been authorized by Plaintiff to import, sell, distribute, offer for sale, or manufacture any products bearing the MAGNOLIA PEARL Marks.

37. Defendants have never been a licensee of Plaintiff and have never been licensed in any manner to import, sell, distribute, offer for sale, or manufacture any merchandise bearing the MAGNOLIA PEARL Marks.

38. Upon information and belief, Defendants are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale counterfeit and/or unauthorized products that has caused and will continue to cause significant harm to Plaintiff's brand, reputation, consumer perception, and its overall business operations.

39. Upon information and belief, Defendants' infringing acts as alleged herein have resulted in actual confusion as evidenced by misdirected customer complaints and negative online reviews mentioning poor quality goods while referencing the Magnolia Pearl brand and MAGNOLIA PEARL Marks.

40. Upon information and belief, at least a portion of the goods sold by Defendants differ materially from genuine Magnolia Pearl products that are sold through authorized channels, including:

    a. Differences in Shipping and/or Packaging – Goods sold through Magnolia Pearl's official website and/or authorized distributors and which are shipped to consumers are wrapped in MAGNOLIA PEARL-branded tissue paper and neatly held together

by a ribbon. The packaging also includes printed matter in the form of a post-card style card that contains information about the MAGNOLIA PEARL brand. In contrast, Defendants' goods are packaged differently and in a manner customers of the MAGNOLIA PEARL brand would find material. Specifically, Defendants package at least some of their goods in a generic United States Postal Services envelope wrapped in a sheet of yellow eBay-branded tissue paper. A comparison of genuine Magnolia Pearl packaging and Defendants' packaging is shown below.

| Genuine Magnolia Pearl Packaging | Defendants' Packaging |
| --- | --- |
|  | |

b. <u>Differences in Product Packaging</u> – Certain products sold through Magnolia Pearl's official website or authorized distributors feature distinctive packaging specific to the item. For instance, authentic Magnolia Pearl socks arrive neatly folded,

wrapped in a brown MAGNOLIA PEARL-branded paper sleeve, and include two external hangtags. Defendants, however, advertise and promote "Magnolia Pearl blueberry floal [sic] otk socks nwt" on its eBay storefront located at <https://www.ebay.com/itm/356947880139?itmmeta=01JY704B927AP4KYRE8 B5WRWVQ&hash=item531bc068cb:g:fQ0AAOSwRNJoL2r0>. Despite promoting these products as "nwt" (which stands for "new with tags"), Defendants' products lack the original and distinctive packaging that authentic Magnolia Pearl socks are known for, misleading consumers and diminishing the brand's presentation standards. Additionally and as mentioned above, Magnolia Pearl products are neatly folded and held together with a string or ribbon; whereas, the products Defendants ship appear to be carelessly folded. Exemplars are shown below:

| Products received directly from Magnolia Pearl's official website | "Magnolia Pearl blueberry floal [sic] otk socks nwt" sold by Defendant |
|---|---|
|  | |

| Magnolia Pearl Products | Defendants' Product |
|---|---|



41.     These material differences are not merely cosmetic or trivial; they are central to the consumer's expectations and the goodwill associated with the Magnolia Pearl brand.

42.     Additionally, Plaintiff has implemented comprehensive quality control procedures designed to preserve the integrity, reputation, and distinctiveness of its brand. These procedures include strict distribution guidelines that prohibit the sale of its products on unauthorized third-party platforms, such as eBay. These restrictions are essential to ensure that consumers receive authentic MAGNOLIA PEARL products in their intended condition, accompanied by appropriate packaging, customer service, and brand experience. Defendants' unauthorized use of the MAGNOLIA PEARL Marks to sell goods on eBay undermines these quality control measures, bypasses Plaintiff's established safeguards, and creates a material risk of consumer confusion.

43.     Defendants' unauthorized distribution compromises Magnolia Pearl's ability to monitor product quality, thereby diminishing the MAGNOLIA PEARL brand's value.

44.     Upon information and belief, Defendants have acted in bad faith and such acts will mislead and confuse and were intended to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Accused Products with Magnolia Pearl, or as to the origin, sponsorship, or approval of the Accused Products with Magnolia Pearl.

45.     Upon information and belief, Defendants have had full knowledge of Magnolia Pearl's ownership of the MAGNOLIA PEARL Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

46.     Upon information and belief, Defendants have engaged in the aforementioned bad faith activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading off the goodwill and reputation of Plaintiff.

47.     On May 23, 2025, Plaintiff sent a cease-and-desist letter to Defendant Leshtz demanding, *inter alia*, information about Defendants' sales of Magnolia Pearl products, its source for the Magnolia Pearl products, and a list of Magnolia Pearl products that Defendants have in their possession or to which it had access. Defendant Leshtz through his attorney responded to the cease-and-desist letter and stated that he would stop selling MAGNOLIA PEARL products, but refused to reveal the source of the Accused Products. Despite Defendant Leshtz's statement that he would stop selling MAGNOLIA PEARL products, he has continued to do so as shown in the previously identified **Exhibit A and Exhibit B**. A copy of the cease-and-desist letter is attached as **Exhibit F**.

## <u>FIRST CAUSE OF ACTION</u>
### <u>(Federal Trademark Infringement and Counterfeiting– 15 U.S.C. §1114)</u>

48.     Plaintiff incorporates by reference each and every one of the preceding Paragraphs 1-47 as though fully set forth herein.

49. Plaintiff is the owner of the MAGNOLIA PEARL Marks, which are valid, protectable, and registered with the United States Patent and Trademark Office.

50. Plaintiff's U.S. trademark registrations for the MAGNOLIA PEARL Marks are in full force and effect and have been used continuously since their respective first dates of use. Indeed, many of the MAGNOLIA PEARL Marks are incontestable by virtue of their registrations and continuous use in commerce for more than five years.

51. The MAGNOLIA PEARL Marks are nationally recognized, including within the Northern District of Illinois, as being affixed to goods and merchandise originating from Plaintiff.

52. Defendants' failure to obtain the consent or authorization of Plaintiff to deal in and commercially distribute, market and/or sell clothing bearing Plaintiff's MAGNOLIA PEARL Marks and/or sale of products bearing counterfeit reproductions of the MAGNOLIA PEARL Marks into the stream of commerce is likely to lead to and result in consumer confusion, mistake or deception as to the origin and quality of the Accused Products among the general public, and is likely to cause the public to believe that Plaintiff has produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiff.

53. Defendants' use of the MAGNOLIA PEARL Marks is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control its trademarks.

54. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. §1114.

55. Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' goods and to injure Plaintiff and reap the benefit of Plaintiff's goodwill associated with Plaintiff's trademarks.

56.     As a direct and proximate result of Defendants' infringing conduct, Plaintiff has been injured and will continue to suffer injury to its business and reputation for which it is without an adequate remedy at law.

57.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using any of the MAGNOLIA PEARL Marks, and/or any marks identical and/or confusingly similar thereto, and to recover from Defendants all damages, including attorneys' fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits, and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. §§ 1116 and 1117, attorneys' fees and treble damages pursuant to 15 U.S.C. §1117(b), and/or statutory damages pursuant to 15 U.S.C. §1117(c), together with prejudgment and post-judgment interest.

## SECOND CAUSE OF ACTION
### (Unfair Competition, False Designations of Origin, and False Descriptions – 15 U.S.C. §1125(a))

58.     Plaintiff incorporates by reference each and every one of the preceding Paragraphs 1-57 as though fully set forth herein.

59.     Defendants' use of the MAGNOLIA PEARL Marks in interstate commerce and advertising relating to the same constitutes false designation of origin and a false representation that the goods are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiff or come from the same source as Plaintiff's goods when in fact they do not.

60.     Defendants' use of the MAGNOLIA PEARL Marks is without Plaintiff's permission or authority and is in total disregard of Plaintiff's rights to control its trademarks.

61.     Defendants' infringing activities are likely to lead to and result in confusion, mistake, or deception, and are likely to cause the public to believe that Plaintiff has produced,

sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiff.

62.     Defendants' unauthorized use in commerce of the MAGNOLIA PEARL Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

63.     Upon information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

64.     Defendants' conduct as alleged herein constitutes unfair competition, false designations of origin, and false descriptions in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

65.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

66.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using any of the MAGNOLIA PEARL Marks, and/or any marks identical and/or confusingly similar thereto, and to recover from Defendants all damages, including attorney's fees, that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. §§ 1116 and 1117, together with prejudgment and post-judgment interest.

## THIRD CAUSE OF ACTION
### (Federal Trademark Dilution - 15 U.S.C. §1125(c))

67.     Plaintiff incorporates by reference each and every one of the preceding Paragraphs 1-66 as though fully set forth herein.

68.     Due to Plaintiff's longstanding use of the MAGNOLIA PEARL Marks in connection with clothing and online retail store services featuring clothing since at least as early as October 2001, Plaintiff's MAGNOLIA PEARL Marks are famous and distinctive and are widely recognized by the consuming public in the United States in connection with clothing.

69.     Upon information and belief, Defendants' unlawful actions commenced well after the MAGNOLIA PEARL Marks became famous. Defendants knowingly, deliberately, and willfully engaged in conduct intended to trade on Plaintiff's reputation and to dilute Plaintiff's MAGNOLIA PEARL Marks. Defendants' conduct is willful, wanton and egregious.

70.     Defendants' intentional sale of unauthorized and/or non-genuine clothing and accessories bearing the MAGNOLIA PEARL Marks is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers to believe that the substandard imitations are genuine. The actions of Defendants complained of herein have diluted and will continue to dilute the MAGNOLIA PEARL Marks, and are likely to impair the distinctiveness, strength and value of the MAGNOLIA PEARL Marks, and injure the business reputation of Plaintiff and its MAGNOLIA PEARL Marks.

71.     Defendants have caused and will continue to cause Plaintiff irreparable harm.

72.     Plaintiff has no adequate remedy at law.

73.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using any of the MAGNOLIA PEARL Marks, and/or any marks identical and/or confusingly similar thereto, and to recover from Defendants all damages, including attorney's fees,

that Plaintiff has sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs of this action pursuant to 15 U.S.C. §§ 1116, 1117, and 1125, together with prejudgment and post-judgment interest.

## FOURTH CAUSE OF ACTION
### (Deceptive Trade Practices Under 815 ILCS § 510/2, *et seq.*)

74.     Plaintiff incorporates by reference each and every one of the preceding Paragraphs 1-73 as though fully set forth herein.

75.     The MAGNOLIA PEARL Marks are strong and distinctive marks that have been in use for many years and have achieved enormous and widespread public recognition.

76.     Due to the foregoing and Plaintiff's consistent publicity and advertising to its consumers of the MAGNOLIA PEARL Marks, Plaintiff's marks have become uniquely associated with Plaintiff and identify Plaintiff as the source of Plaintiff's products. Plaintiff's MAGNOLIA PEARL Marks are valid trademarks under state and federal law.

77.     Defendants have engaged in unfair and deceptive acts and practices, including their unauthorized use of the MAGNOLIA PEARL Marks, causing a likelihood of confusion and/or misunderstanding as to the source of its goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine Magnolia Pearl products, representing that their products have Plaintiff's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

78.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*

79.     Plaintiff has no adequate remedy at law, and Defendants' conduct has caused Plaintiff to suffer damage to its reputation and associated goodwill. Unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

### FIFTH CAUSE OF ACTION
### (Trademark Dilution Under 765 ILCS 1036/65)

80.     Plaintiff incorporates by reference each and every one of the preceding Paragraphs 1-79 as though fully set forth herein.

81.     The MAGNOLIA PEARL Marks have acquired a high degree of distinctiveness in the State of Illinois and is famous within the meaning of 765 ILCS 1036/65.

82.     The unauthorized use of the MAGNOLIA PEARL Marks by Defendants have diluted the distinctive qualities of the famous MAGNOLIA PEARL Marks.

83.     The Defendants' acts are causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court.

84.     Defendants willfully intended to trade on the MAGNOLIA PEARL Marks' reputation.

85.     Plaintiff has no adequate remedy at law.

86.     In light of the foregoing, Plaintiff is entitled to an injunction, temporarily, preliminarily and permanently enjoining the Defendants and anyone in active concert and participation with Defendants who receive actual notice of the Court's order by personal service or otherwise from engaging in any activity that is likely to dilute the distinctiveness of the MAGNOLIA PEARL Marks, and to any monetary relief available, including damages, profits, and attorney's fees

## SIXTH CAUSE OF ACTION
### (Common Law Trademark Infringement and Unfair Competition)

87.     Plaintiff incorporates by reference each and every one of the preceding Paragraphs 1-86 as though fully set forth herein.

88.     Plaintiff owns and enjoys common law trademark rights to the MAGNOLIA PEARL Marks in Illinois and throughout the United States.

89.     Defendants' misappropriation of Plaintiff's common law trademarks was intended to capitalize on Plaintiff's goodwill for Defendants' own pecuniary gain. Plaintiff has expended substantial time, resources and effort to obtain an excellent reputation for itself and its family of marks. As a result of Plaintiff's efforts, Defendants are now unjustly enriched and are benefitting from property rights that rightfully belong to Plaintiff.

90.     Defendants' conduct as alleged and described above, including their unauthorized use of the MAGNOLIA PEAL Marks is likely to cause confusion as to the source of Defendant's products, all to the detriment of Plaintiff and constitutes trademark infringement and unfair competition under Illinois law.

91.     Upon information and belief, Defendants' actions have been and are deliberate, willful, and in bad faith.

92.     As a direct and proximate result of the unlawful acts described above, Plaintiff has been damaged, and Defendants have been unjustly enriched, in an amount to be determined at the time of trial.

93.     Unless enjoined by this Court, Defendants' unlawful acts will continue to cause irreparable damage, loss, and injury to Plaintiff for which it has no adequate remedy at law.

94.     In light of the foregoing, Plaintiff is entitled to injunctive relief prohibiting Defendants from using the MAGNOLIA PEARL Marks, to recover all damages, including

-22-

attorneys' fees, sustained as a result of Defendants' infringing acts, all profits unjustly obtained by Defendants, and the costs of this action, together with prejudgment and post-judgment interest.

## PRAYER FOR RELIEF

**WHEREFORE,** Magnolia Pearl respectfully prays that this Court enter judgment in its favor and against Defendants as follows:

1.      That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)); and Section 43(c) of the Lanham Act (15 U.S.C. § 1125(c));

2.      That Defendants have engaged in deceptive trade practices in violation of 815 ILCS § 510/2, *et seq*., has caused trademark dilution in violation of 765 ILCS 1036/65, has engaged in trademark infringement and unfair competition under common law, and has engaged in conversion under common law;

3.      Granting temporary, preliminary, and permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from using Magnolia Pearl's trademarks or any marks, designs, works, confusingly similar/substantially similar thereto, including but not limited to:

   a) Manufacturing, designing, importing, advertising, marketing, promoting, supplying, distributing, offering for sale, or selling the Accused Products, and/or any products which bear any of the MAGNOLIA PEARL Marks or any marks/designs identical, substantially similar, and/or confusingly similar thereto;

   b) Engaging in any other activity constituting unfair competition with Magnolia Pearl, or acts and practices that deceive consumers, the public, and/or trade, including without limitation, the use of designations associated with Magnolia Pearl;

-23-

c) Committing any other act which falsely represents or which has the effect of falsely representing that the goods and services of Defendants are licensed by, authorized by, offered by, produced by, sponsored by or in any other way associated with Magnolia Pearl;

4.  Ordering Defendants to deliver to Magnolia Pearl for destruction or other disposition all remaining inventory of the Accused Products, and/or other merchandise bearing the MAGNOLIA PEARL Marks or any marks/works confusingly similar thereto, including all advertisements, promotional and marketing materials therefore, as well as means of making the same;

5.  Ordering Defendants to immediately recall all counterfeit goods from all distributors, retailers, and customers to whom such goods have been distributed or sold;

6.  Ordering Defendants to provide Magnolia Pearl with information, in writing, about the entities from where they sourced the Accused Products, including:

a) The name, address, and contact information of where they obtained the Accused Products; and

b) Logistics information regarding how shipments of the Accused Products were sourced, ordered, and received.

7.  Ordering Defendants to file with this Court and serve on Magnolia Pearl within thirty (30) days after entry of the injunction a report in writing, under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

8.  Ordering an accounting by Defendants of all gains, profits, and advantages derived from its wrongful acts;

9.     Awarding Magnolia Pearl all of Defendants' profits and all damages sustained by Magnolia Pearl as a result of Defendants' wrongful acts, and such other compensatory damages as the court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

10.     Awarding treble damages in the amount of Defendants' profits or Magnolia Pearl's damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117(b);

11.     Awarding applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117(b);

12.     Awarding prejudgment and post-judgment interest;

13.     Awarding Magnolia Pearl statutory damages pursuant to U.S.C. § 1117(c);

14.     Awarding Magnolia Pearl punitive damages and exemplary damages in connection with its claims under Illinois law; and

15.     Such other relief as the Court deems just and proper.

Dated: July 11, 2025

**FOLEY & LARDNER LLP**

*/s/ Jeanne M. Gills*

Jeanne M. Gills (Illinois Bar No. 6225018)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
E-mail: jmgills@foley.com

Justin M. Sobaje
(*pro hac vice* forthcoming)
**FOLEY & LARDNER LLP**
555 South Flower Street, Suite 3300
Los Angeles, California 90071-2418
Telephone: (213) 972-4500
Facsimile: (213) 486-0065
E-mail: jsobaje@foley.com

Emily R. Ostreich (Illinois Bar No. 6339475)
(admission to General Bar forthcoming)

**FOLEY & LARDNER LLP**
100 North Tampa Street, Suite 2700
Tampa, Florida 33602-5810
Telephone: (813) 221-4210
Facsimile: (213) 229-2300
E-mail: eostreich@foley.com

***Attorneys for Plaintiff Magnolia Pearl, LLC***

## DEMAND FOR A JURY TRIAL

Plaintiff demands a jury trial for all issues so triable.

Dated: July 11, 2025

**FOLEY & LARDNER LLP**

/s/ Jeanne M. Gills
Jeanne M. Gills (Illinois Bar No. 6225018)
**FOLEY & LARDNER LLP**
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
Telephone: (312) 832-4500
Facsimile: (312) 832-4700
E-mail: jmgills@foley.com

***Attorney for Plaintiff Magnolia Pearl, LLC***

-26-